UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
MARINA BROWN,

                    Plaintiff,                  COMPLAINT

     - against -                       Civil Action No: 2020 CV _____

NEW YORK CITY; and NEW YORK CITY
DEPARTMENT OF EDUCATION;                <u>JURY TRIAL DEMANDED</u>
                    Defendants.
--------------------------------------------------------X

COMES NOW Plaintiff, Marina Brown ("Brown" or "Plaintiff"), by and through her undersigned counsel, The Law Offices of Neal Brickman, located at 420 Lexington Avenue - Suite 2811, New York, New York 10170, and as and for her Complaint against defendants, New York City ("NYC"), and the New York City Department of Education ("DOE" and together with NYC, the "Defendants"), hereby states and alleges as follows:

Statement Pursuant to Local Civil Rule 1.9

1.     Plaintiff is an individual citizen of the United States of America and, as such, has no interests or subsidiaries that need to be disclosed.

Nature of the Action

2.     This action arises under Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), as well as various additional state and common law causes of action based on Defendants' improper, discriminatory, retaliatory and disparate treatment of Marina Brown.[1]

---

[1] Brown has an action pending in New York Supreme Court for violations of, *inter alia*, the New York City and New York State anti-discrimination laws.

3.      This action seeks compensatory and punitive damages, as well as costs and attorneys' fees, based on, *inter alia*, the Defendants' improperly and routinely passing over Ms. Brown for promotion on the basis of her age, gender, her taking of approved and necessary medical leave, as well as her national origin (Antiguan) and in direct retaliation for complaints that she made concerning the disparate treatment and hostile work environment that she was subjected to over the last several years of her employment with the DOE, culminating with the retaliatory and discriminatory Unsatisfactory ("U") rating given to her by her latest Principal, Mr. Bertrand, after she had retired. The improper, retaliatory, and discriminatory U rating has prevented Brown, a 34-year loyal employee from working in any further capacity within the DOE. This rating is also the subject of a union grievance as it was in violation of the relevant CBA and past precedent within the DOE.[2]

## Jurisdiction

4.      Jurisdiction over the federal claims is invoked pursuant to 28 U.S.C. § 1331, in that these claims arise under the laws of the United States. This action is timely filed within ninety (90) days of the issuance of a valid Right to Sue letter from the Equal Employment Opportunity Commission ("EEOC"), a copy of which is annexed hereto as Exhibit "A".

## Venue

5.      This action is properly laid in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1), because the defendant resides in this judicial district, and (b)(2), because a

---

[2] Ms. Brown has raised similar claims for, *inter alia*, violations of the New York State and New York City anti-discrimination statutes that are pending in the Supreme Court of New York, County of New York.

substantial part of the events and omissions giving rise to the claim occurred in this judicial district.

Parties

6. Brown is an individual citizen of the United States with her principal residence at 942 East 45 Street, Brooklyn, New York 11203.

7. NYC is, and was at all relevant times hereto, a municipal corporation, duly organized and existing under, and by virtue of, the laws of the State of New York.

8. Upon information and belief, at all times relevant hereto, the DOE is, and was at all times relevant hereto, an arm of NYC and thereby governed by the same laws and regulations as NYC. Pursuant to Education Law §2853, the DOE had various supervisory responsibilities over the relevant Principal and Supervisor of Brown which it negligently, woefully, and repeatedly failed to complete.

9. The bad acts referenced above were effected over the last decades but have escalated over the past six years and are ongoing with the most recent actionable events being taken on June 21, 2019 and July 7, 2019. The damages from the latest retaliatory act, namely the blatantly pretextual assignation of a "U" rating, arose on or about June 21, 2019 and are ongoing from that time forward.

10. Upon information and belief, the bad acts were completed in the City of New York, Counties of New York and Kings.

11. Brown has been an educator within the DOE for the past 34 years. She has served as a supervisor for the last 20 years. She has served as an Assistant Principal at PS/IS 109 for the last 18 years. In 2017 she graduated with a doctoral degree in education from The Sage

Colleges. She has been granted tenure by the DOE and routinely has received satisfactory / meets expectations – the highest ranking for tenured teachers – from the DOE.

12. Despite her eminent qualifications, Brown was routinely passed over for promotion to Principal over the last decades.

13. When she was passed over for promotion in favor of Dwight Chase, Bertrand's predecessor, she was told by a DOE official that the DOE wanted a man for the position. Mr. Chase was a younger male born in the United States with less experience and fewer qualifications than Brown.

14. For the 2016-17 academic year, Brown was passed over for promotion to Principal in favor Bertrand, another younger, male born in the United States with dramatically less experience and fewer qualifications than Brown.

15. From the outset, Defendants, through Bertrand, made Brown's life incredibly difficult, commencing by relegating her to an "office" that was essentially a converted closet, continuing with the denial of compensation that was otherwise due and owing and habitually granted to Assistant Principals and the filing of false complaints in her file, and culminating in her discriminatory, retaliatory and openly malicious and vindictive U rating.

16. At the time that Bertrand became Principal, Brown was still involved with a complaint of discrimination concerning her reporting of acts of child abuse and student safety on school buses: such reporting had been well within Brown's duties and responsibilities and was mandated by any reasonable ethical standard. Nevertheless, she had been disciplined for taking such actions on behalf of her students. Over the next three years, the harassment and retaliation of Brown only escalated.

17. Before coming to PS/IS 109, Bertrand had *de minimis* experience with lower school, primary education. As such, he leaned especially heavily on Brown.

18. In the Spring of 2018, Brown, tired of the disparate treatment and hostile environment by Defendants that Chase had begun and Bertrand, who socializes with Chase, continued, told Bertrand that she would be seeking out other opportunities, including those that would enable her to make use of her recently achieved degree.

19. Bertrand rejected any assertion that she might go anywhere, and foreshadowing his later manipulation, asserted that he expected her back at PS/IS 109 in September.

20. Upon Brown's return on or about August 27, 2018, she learned that Bertrand assigned her an excessive workload, which included not only all of her old responsibilities with new additions, but also responsibilities that had been previously, and traditionally, assigned to other individuals.

21. The next day, Brown had a Level 1 principal interview, a fact known to Bertrand.

22. After speaking with her union about the excessive workload, Brown filed a complaint of discrimination with the DOE's Office of Equal Opportunity & Diversity.

23. Thereafter, in direct response to, and as illegal and improper retaliation for, the making of such complaints, Bertrand's harassment of Brown increased and the hostile work environment got worse.

24. By way of example only, Bertrand, in an effort to punish Brown for her complaints of discrimination, began to create a false paper trail and submitted knowingly false and distorted complaints into Brown's personnel file. Certain of these complaints are belied by common sense and others by concrete factual evidence.

25. By way of example only, Bertrand wrote up Brown for not adhering to fallacious supervisory guidelines that were not based in reality and could not be met within the strictures set forth. Brown, nevertheless, completed all of the required assignments in a reasonable time period. Bertrand also alleged improprieties in the administration of a new form of test despite failing to provide any training for the test's administration. Brown had to seek out the very limited accessible information about the test that she obtained access to and teach herself the limited relevant protocols available only through her excessive diligence concerning the test's administration.

26. Similarly, Bertrand wrote up Brown for a presentation that she made to other teacher's based on a DOE approved model in which he critiqued the form of the content (which had been previously DOE approved) and the reactions of the participants (whose reactions and responses on the post-presentation questionnaire were incredibly positive and fully demonstrate the clear pre-textual nature of Bertrand's sham complaint and clear retaliatory abuse of Brown).

27. As a result of this ongoing abuse, Brown suffered undue stress and even considered retiring part way through the school year.

28. Brown then was granted and participated in two Level 2 Interviews – the granting of which generally resulted in the offer of a promotion if the candidate's then current principal gave a positive reference. Brown was told that the next step would be to talk to Bertrand, but she heard nothing further after those interviews as to either potential position. It is clear that Bertrand, in further retaliation and discrimination against Brown, scuttled her application – a separately actionable event which the Defendants also contributed to.

29. Unfortunately, in the late Fall, Brown was involved in a car accident which required her to miss multiple days of work. This accident ultimately required Brown to have a knee operation which also resulted in additional approved days out of work.

30. Rather than afford Brown any accommodation, the Defendants through Bertrand continued his harassment. In fact, on or about March 6, 2019 one day after her return to work from approved leave, Brown was given a notice of a disciplinary conference on another trumped-up charge manufactured by Bertrand.

31. No longer able to stand the harassment, retaliation, and hostile work environment, in April of 2019, Brown considering herself constructively discharged, submitted notice of her intent to retire at the end of the school year.

32. Even this acquiescence did not stop Bertrand who continued to write up Brown on knowingly frivolous bases and for alleged bad acts that other similarly situated employees that were younger, male, American or who had not complained of discrimination were not so "disciplined."

33. The improper disparate treatment, discrimination, and retaliation culminated with Bertrand's issuing Brown a U rating in a June 21, 2019 employment review.

34. Bertrand exacerbated this bad act with an amended review, also with a U rating, on July 7, 2019.

35. Bertrand issued these reviews and the U ratings with the specific knowledge that they were unwarranted; would preclude Brown from obtaining employment of any kind with the DOE; and would materially impede any future employment in the education field for Brown in any forum.

36. The Defendants either directly effected the complained of acts of retaliation and discrimination, as well as tortious interference, against Brown or otherwise approved or sanctioned and allowed each of the actions undertaken by Bertrand and Chase, before him, and fostered an environment in which such discrimination and retaliation were not only permitted, but also condoned.  The Defendants also clearly acted with malice when they tortiously interfered with Brown's future employment opportunities.  No other similarly situated individuals who were male, younger and/or American, or who had not complained of discrimination were similarly mistreated.

37. As a result of these bad acts based on improper discrimination and retaliation, including, but not limited to, creation of a hostile work environment, disparate treatment, harassment, constructive discharge, adverse employment determinations, denial of future opportunities, loss of reputation and earning capacity, and retaliation, Brown has suffered injury and harm, including, but not limited to, lost back pay and benefits, lost future earnings and benefits, damages to reputation, psychological and mental damages and hardship, in an amount to be determined at trial, but in no event less than $1,000,000.00, as well as entitlement to the costs and expenses of this action, including reasonable attorneys' fees; all warranting, in addition, the imposition of a punitive damages award.

38. The EEOC granted Brown a Right to Sue letter dated October 1, 2020.  (A copy of the Right to Sue letter is annexed hereto as Exhibit "A").

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Violations of Title VII as Against Defendants)**

39. Plaintiff repeats, realleges and reiterates each and every allegation set forth in paragraphs "1" through "38" with the same force and effect as if fully set forth herein at length.

40. Title VII prohibits workplace discrimination, adverse employment decisions and disparate treatment on the basis gender (female) and national origin (Antiguan).

41. Defendants created, fostered, and left unchecked an abusive environment which guaranteed a hostile work environment, disparate treatment, and general discriminatory employment actions as against Brown.

42. Brown was repeatedly subjected to increased and heightened supervision; subject to excessive and disparate workloads; denied proper training; subjected to unwarranted and baseless attacks on her professionalism; written up without basis and in form replete with false statements and accusations; subjected to a hostile work environment; stripped of her office; denied promotions; denigrated; publicly chastised; and ultimately constructively terminated and given a "U" rating.

43. No other male, non-Antiguan employees were treated in a like manner, subjected to such abuses, or had their professional reputation tarred in this way.

44. Ms. Brown was specifically told when being considered for a promotion that Defendants were looking for a male candidate.

45. The position was ultimately filled by Defendants with an objectively less qualified, less experienced male.

46. The less experience male, non-Antiguan who was promoted ahead of Plaintiff was allowed to continue to, inter alia, disparately treat her, abuse her, create and foster a hostile environment, constructively discharge her, and tarnish her otherwise impeccable thirty-four (34) year career at the DOE.

47. There was no legitimate non-discriminatory basis for Defendants' constructive discharge, or tarnishing the reputation, of Plaintiff.

48. As a direct result of this illegal and improper discrimination, in the form of disparate treatment, hostile work environment and overall improper and pervasive discrimination on the basis of national origin, gender , and race Plaintiff has suffered injury and harm in an amount to be determined at trial, but in no event less than One Million Dollars ($1,000,000.00); the costs and disbursements of this action, including reasonable attorneys' fees; all relevant interest; and any such other relief to Plaintiff as this Court deems just and proper.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Violations of the ADEA Against Defendants))

49. Plaintiff repeats, realleges and reiterates each and every allegation set forth in paragraphs "1" through "48" with the same force and effect as if fully set forth herein at length.

50. The ADEA prohibits workplace discrimination, adverse employment decisions and disparate treatment on the basis of age.

51. Brown is 64 years of age and was 62 years of age when a majority of the bad acts complained of herein occurred.

52. Defendants created, fostered, and left unchecked an abusive environment which guaranteed a hostile work environment, disparate treatment, and general discriminatory employment actions as against Brown.

53. Brown was repeatedly subjected to increased and heightened supervision; subject to excessive and disparate workloads; denied proper training; subjected to unwarranted and baseless attacks on her professionalism; written up without basis and in form replete with false statements and accusations; subjected to a hostile work environment; stripped of her office; denied promotions; denigrated; publicly chastised; and ultimately constructively terminated and given a "U" rating.

54. No other younger employees were treated in a like manner, subjected to such abuses, or had their professional reputation tarred in this way.

55. Plaintiff was passed over for promotion in favor of younger candidates.

56. There was no legitimate non-discriminatory basis for Defendants constructive discharge, or tarnishing the reputation, of Plaintiff.

57. As a direct result of this illegal and improper discrimination, in the form of disparate treatment, hostile work environment and overall improper and pervasive discrimination on the basis of age, Plaintiff has suffered injury and harm in an amount to be determined at trial, but in no event less than One Million Dollars ($1,000,000.00); the costs and disbursements of this action, including reasonable attorneys' fees; all relevant interest; and any such other relief to Plaintiff as this Court deems just and proper.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Violations of the Americans with Disabilities Act Against Defendants)

58. Plaintiff repeats, realleges and reiterates each and every allegation set forth in paragraphs "1" through "57" with the same force and effect as if fully set forth herein at length.

59. The ADA prohibits discrimination on the basis of a disability, for taking leave for the same, and for failing to make reasonable accommodation for the same.

60. It is unquestioned that Brown requested and took short term disability leave in 2019 as a result of injuries sustained in a car accident in late 2018.

61. It is unquestioned that one day after her return from leave, Ms. Brown was given a disciplinary notice.

62. It is unquestioned that Defendants and Bertrand chastised, harassed, and disciplined Brown for requesting and taking leave and meeting with her doctors concerning her disabled knee throughout 2019.

63. It is unquestioned that Brown was written up and had her sterling 34-year reputation sullied due to her injuries and disabled knee.

64. It is also unquestioned that other employees, not suffering from such a disability were not similarly constructively discharged, harassed, subjected to the tarnishing of their reputation, or otherwise discriminated against.

65. Plaintiff requested reasonable accommodations to allow her to see the required medical personnel so as to ensure her proper recovery for her injuries.

66. Despite completing all of her work, Defendants not only did not accommodate Brown's reasonable requests, but they retaliated against her for making them and used her need to obtain medical care as an excuse to discipline her and tarnish her previously impeccable 34 year reputation with the DOE.

67. As a direct result of this illegal and improper discrimination, in the form of disparate treatment, hostile work environment and overall improper and pervasive discrimination on the basis of Plaintiff's disability, taking leave for the same, and Defendants' failure to reasonably accommodate the same, Plaintiff has suffered injury and harm in an amount to be determined at trial, but in no event less than One Million Dollars ($1,000,000.00); the costs and disbursements of this action, including reasonable attorneys' fees; all relevant interest; and any such other relief to Plaintiff as this Court deems just and proper.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**(Improper Retaliation in Contravention of Title VII and the ADEA Against Defendants)**

68. Plaintiff repeats, realleges and reiterates each and every allegation set forth in paragraphs "1" through "67" with the same force and effect as if fully set forth herein at length.

69. Both Title VII and the ADEA prohibit workplace discrimination, adverse employment decisions and disparate treatment in retaliation for the submission of complaint alleging discrimination.

70. After Brown made complaint of discrimination and in retaliation therefor, Defendants created, fostered, and left unchecked an abusive environment which guaranteed a hostile work environment, disparate treatment, and general discriminatory employment actions as against Brown.

71. Brown, as set forth above, was specifically mistreated, harassed, subjected to verbal abuse, subjected to employment sanctions, subjected to loss of pay, subjected to loss of training and employment benefits, subjected to a hostile work environment and repeated disparate treatment and ultimately forced out of her position in retaliation for her complaints of discrimination.

72. Other similarly situated employees who did not complain of discrimination were not so abused, harassed, and mistreated.

73. There was no legitimate basis for these adverse employment actions or for the actions taken against Brown after her constructive discharge and forced resignation from her position as Vice-Principal.

74. As a direct result of this illegal and improper discrimination, in the form of disparate treatment, hostile work environment and overall improper and pervasive discrimination due the Defendants' illegal and improper retaliation, Plaintiff has suffered injury and harm in an amount to be determined at trial, but in no event less than One Million Dollars ($1,000,000.00); the costs and disbursements of this action, including reasonable attorneys' fees; all relevant interest; and any such other relief to Plaintiff as this Court deems just and proper.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Improper Retaliation in Contravention of the ADA Against Defendants)

75. Plaintiff repeats, realleges and reiterates each and every allegation set forth in paragraphs "1" through "74" with the same force and effect as if fully set forth herein at length.

76. The ADA prohibits workplace discrimination, adverse employment decisions and disparate treatment in retaliation for the submission of complaint alleging discrimination and for taking leave.

77. After Brown requested and took leave and then requested accommodation for her injury and disabled knee, she was subjected to an increasingly hostile environment.

78. Brown, as set forth above, was specifically mistreated, harassed, subjected to verbal abuse, subjected to employment sanctions, subjected to loss of training and employment benefits, subjected to a hostile work environment and repeated disparate treatment and ultimately forced out of her position in retaliation for her complaints of discrimination and taking leave for her disability and seeking treatment for the same thereafter.

79. Other similarly situated employees who did not take leave or seek an accommodation to correct injuries were not so abused, harassed, and mistreated.

80. There was no legitimate basis for these adverse employment actions or for the actions taken against Brown either including, or after, her constructive discharge and forced resignation from her position as Vice-Principal.

81. As a direct result of this illegal and improper discrimination, in the form of disparate treatment, hostile work environment and overall improper and pervasive discrimination due the Defendants' illegal and improper retaliation, Plaintiff has suffered injury and harm in an amount to be determined at trial, but in no event less than One Million Dollars ($1,000,000.00);

the costs and disbursements of this action, including reasonable attorneys' fees; all relevant interest; and any such other relief to Plaintiff as this Court deems just and proper.

<u>Jury Demand</u>

82. Plaintiff hereby respectfully demands a trial by Jury.

Dated: New York, New York
December 28, 2020

_____
Ethan Leonard (EL2497)
The Law Offices of Neal Brickman, PC.
Attorneys for Plaintiff Marina Brown
420 Lexington Avenue - Suite 2440
New York, New York 10170
(212) 986-6840
Ethan@brickmanlaw.com